No. 2,522.

| 39  597 |
| 111  446 |

IN THE MATTER OF THE ESTATE OF JAMES HOLBERT, DECEASED.

ESTATES OF DECEASED PERSONS.— LIABILITY OF EXECUTOR FOR INTEREST ON FUNDS BELONGING TO THE ESTATE. — Where an executor is directed by the will to loan out moneys belonging to the estate, and he converts the same and invests it in his own business, he may, at the election of the legatee or other party interested, be held to account either for the interest which he might, with ordinary diligence, have obtained upon a loan of the fund, or for the profit realized from such investment.

APPEAL from the Probate Court of San Joaquin County.

The facts are stated in the opinion.

*L. T. Carr*, for Appellant.

The principle that when an executor uses the funds of an estate in his own private business, and for his own profit

and advantage, he is liable for the profits or for interest, at the election of the parties interested in the estate, is too well established to be now controverted. (*Walls* v. *Walker*, 37 Cal. 431.)

In England the legal rate of interest is established by Act of Parliament at five per cent. (2 Blacks. Com. 370); and an executor is chargeable with interest at four per cent. or balances, when he has been guilty of negligence in omitting to lay out the money for the benefit of an estate; when he has made use of the money, or has committed some other misfeasance to his own advantage or profit, he is charged with five per cent; sometimes he has, under peculiar circumstances, been required to have interest charged against him with rests, and sometimes, but rarely, charged with compound interest. (Williams on Executors, pp. 1670–72, and cases cited in text and notes.)

In the different American States, the same rule governs as in England, except in this: that the English rule of equitable interest does not prevail.

In New York, where an executor is liable for interest, the full legal rate is charged. (Dayton on Surrogates, 492.)

In Pennsylvania, it is enacted by statute, "that the amount of interest, in all cases, to be paid by executors * * shall be determined by the Orphans' Court, under all the circumstances of the case, but shall not, in any instance, exceed the legal rate of interest for the time being." (See note of Williams on Executors, where the Act is quoted, p. 1670.)

That the rate which an executor can be charged is the legal rates, is established by the following cases. (*Young* v. *Brush*, 38 Barb. N. Y. 294; *Pennypacker's Appeal*, Penn. State R. 494; *Moore* v. *Felkel*, 7 Florida, 44; *Toliday* v. *Bissey*, 12 Penn. State R. 347; *Paine* v. *Paulk*, 39 Maine, 15; *Young* v. *McKinney*, 5 Florida; *Neil* v. *Neil*, 31 Miss. 36; *Bingold* v. *Stow*, 20 Ark. 526.)

The legal rate of interest in the State of California, at the date of the decree, was seven per cent.

"The law does not tolerate the payment of more than legal interest on money, except where there is an express written agreement, and a higher rate of interest cannot,

therefore, be proved as a measure of damages." (*Crosby* v. *McDermit*, 7 Cal. 147.)

It is only in special cases, and under peculiar circumstances, which must be proved that interest is to be compounded against executors. (*Garniss* v. *Gardner*, 1 Edw. Ch. Rep. 128.)

*J. H. Budd* and *F. F. Baldwin*, for Respondents.

*First*—This is one of the cases in which the rate of interest is not fixed by the Act of March 30, 1868. (Statutes 1867–8, p. 553.)

That statute provides that when there is no express contract in writing, fixing a different rate of interest, interest shall be allowed at the rate of seven per cent. per annum, for all moneys, after they become due, on any bill, promissory note, or other instrument in writing; on judgment, for moneys lent; for moneys due on settlement of account, from the day the balance is ascertained, and for moneys received to the use of another.

The appellant received the money in a *fiduciary* capacity, and not simply to the use of *another;* and the Court below rightly determined that the appellant should be charged in his account with such a rate of interest as would place the *cestui que trust* in the same condition in which a conscientious discharge of his duty would have placed them. (2 Kent Com., 11th ed. p. 250, note C.; *Schieffelin* v. *Stewart*, 1 Johns. Ch. 620; *Rappael* v. *Boehm*, 11 Vesey, 92; 13 *Id.* 407–590; *Stockpole* v. *Stockpole*, 4 Dow, 209; *Barney* v. *Saunders*, 16 How. U. S. 185; *Forbes* v. *Ross*, 2 Cox, 113; *Knox* v. *Cattel*, 13 E. L. & E. 285.)

*Second*—There is a distinction recognized at common law, between money received to the use of another, and money received in a fiduciary capacity. (Chitty on Contracts, 10th Am. Ed. 678; *Bartlett* v. *Dimond*, 14 M. and W. 49; *Pardee* v. *Price*, 16 *Id.* 451; *Roper* v. *Holland*, 3 A. and E. 99.) The same distinction seems to be recognized in the Act of 1863, concerning specific contracts. (Stats. 1863, p. 687.)

The appellant having used the $7,000 in his own business,

was charged properly with the customary interest for the use of the property. (*Walls* v. *Walker*, 37 Cal. 430–431.

. *Third*—The laws of California, in respect to interest for money, are quite different from the statutes of England, and from the statutes of most other States. In most other States, as well as in England, the statute fixes a rate of interest for the *use* or for the *forbearance* of money, which could not be exceeded, although a less rate of interest might be agreed upon in writing.

. In California, interest at one and one fourth per cent. per month, is not illegal. In most of the States, it would be ; and the parties could not make a valid agreement to pay or receive that rate of interest.

*Fourth*—The appellant was not charged in his account, interest on $7,000, simply as interest on money. He had applied the assets of the estate contrary to the duty imposed upon him. This *devastavit*, or wasting of the assets, he should make good. (2 Williams Ex'r, 1529.)

He could have loaned the money at one and one fourth per cent. per month, and should have done so. That was the customary rate of interest, and no question is made but that appellant made profit by the use of the money, equal to the customary rate of interest. Such, at least, would be the fair and reasonable presumption.

WALLACE, J., delivered the opinion of the Court :

This appeal is brought by the executor of the estate, from a decree of the Probate Court, directing him to be charged with interest at the rate of one and one quarter per cent. per month, upon certain moneys of the estate. The evidence before the Court below is not in the record here, but it was made to appear to that Court that the executor had mixed $7,000 of the assets of the estate with his own private funds, and used it in his business from May, 1869, to March, 1870, and that he might, during all that time, in the exercise of reasonable diligence, have loaned the money on good security, at the rate of one and one quarter per cent. per month, which was the usual rate of interest in San Joaquin County.

It also appeared that the will of the decedent contained a direction to his executor, to loan the moneys of the estate on good security. It is claimed by the executor that, upon this state of facts, he should have been charged at the rate of seven per centum per annum, instead of one and one quarter per cent. per month.

The facts found by the Court below amount to a *devastavit* upon the part of the executor. It was a misappropriation of the funds of the estate in his hands, to have mingled them with his own affairs, and employed them in the prosecution of his private business.

Under the direction contained in the will, he should have loaned this money at interest, and a wilful failure in this duty will render him accountable; and the measure of that accountability will depend upon the circumstances.

In case that he has negligently permitted the fund to lie idle and unproductive, he will be chargeable with interest at the non-conventional rate fixed by statute. In case, however, that he has actually converted the fund and invested it in his business, he may, at the election of the legatee or other party interested, be held to account, *either* for the interest which he might, with ordinary diligence, have obtained from others upon a loan of the fund, or to account for the profit, if any, realized by the employment of the fund in the business in which it was embarked; the principle upon which the Court proceeds being that the executor is *never* to be permitted to turn the fund to his own private advantage, nor to make gain for himself by its use. Therefore, if he will divert the fund into his private business, while he incurs the usual risk of loss, he shall have no corresponding hope of profit. This principle, as applied to the accountability of executors, has been recognized for nearly two hundred years as salutary and to be commended, because, as Chancellor Kent says : "It secures fidelity and removes temptation." The respondent elected in the Court below to take the interest at which the appellant might have loaned the money, and made no inquiry into the amount of profit that the latter had realized from its use. The appellant complains here, that

there was no proof on the subject of profits; but this did not injure him, because such proof would still have left the respondent the option to go for the interest at the prevailing rate, instead of the profits themselves.

We discover no error in the decree, and it is affirmed.