111  441
112  295
111  441
120  536
111  441
121  472
111  441
124  573
111  441
133  450
111  441
147  513

[Sac. No. 83.  Department One.—March 6, 1896.]

# ESTATE OF HENRY COUSINS, MINOR, J. M. FOX, GUARDIAN, APPELLANT.

GUARDIAN AND WARD — SETTLEMENT OF GUARDIAN'S ACCOUNT—COMMINGLING OF MONEYS—INTEREST.—The limit of liability of a guardian for commingling the funds of his ward with his own, and for their use in his own business, where it is not shown that a larger profit was realized therefrom, is the return of the principal with legal interest thereon, compounded annually; and it is error to charge the guardian upon settlement of his account, more than the legal rate of interest, compounded annually, upon the ground that such higher rate is a current conventional rate of interest usually charged on money loaned, in the absence of any showing that he could have loaned the money at such rate, or had been benefited to that extent from his use of the funds.

ID. — LOAN UPON MORTGAGE SECURITY—DEPRECIATION IN VALUE—GOOD FAITH — INTEREST.—Where a guardian made a loan of a portion of his ward's funds upon a mortgage of real and personal property taken in his own name, but in good faith for the benefit of the ward, and a portion of the loan was lost by depreciation in value of the property, without any finding that the guardian was guilty of negligence, or of facts from which negligence can be inferred, he is, if chargeable at all with the principal of the debt lost by the loan, not chargeable with any interest thereon.

ID.—RESPONSIBILITY OF TRUSTEE — ERRORS OF JUDGMENT — REASONABLE CARE.—Mere error of judgment is not sufficient to subject a trustee to punitive responsibility, nor does the law demand of him extraordinary care, or make him an insurer of the trust property, or liable for losses upon an investment which may occur from depreciation of values, where he has exercised reasonable care, diligence, and business prudence in the form, manner, and securities approved of by rules of equity.

ID. — PURCHASE OF LAND BY GUARDIAN — DISAFFIRMANCE BY WARD — COMPOUND INTEREST NOT ALLOWED. —Where land upon which the ward resided with his parents was purchased by the guardian in good faith for the supposed benefit of the ward, at the request of his parents, but the ward refused to ratify and disaffirmed the purchase, the guardian is not chargeable with compound interest on the amount of the investment. •

ID.—LIABILITY OF TRUSTEE FOR INTEREST—NEGLIGENCE—WILLFUL OMISSION.—It is a general rule that, where the omission of a trustee is due to simple negligence, without any actual intent to cheat or defraud, simple interest alone is allowed the *cestui que trust* on the trust funds; but if the omission is willful, compound interest is allowed.

APPEAL from an order of the Superior Court of Tulare County settling the account of a guardian.  N. W. CROSS, Judge.

The facts are stated in the opinion of the court.

*Bradley & Farnsworth*, for Appellant.

A guardian who commingles the funds of his ward with his own and uses the same, is only chargeable with legal interest with annual rests. (Civ. Code, sec. 2262; *Estate of Gasq*, 42 Cal. 290; *Crosby* v. *McDermitt*, 7 Cal. 146, 148; *In re Eschrich*, 85 Cal. 98; *Estate of Stott*, 52 Cal. 403; *Estate of Clark*, 53 Cal. 355; *Merrifield* v. *Longmire*, 66 Cal. 180; *Guardianship of Cardwell*, 55 Cal. 137; *Wheeler* v. *Bolton*, 92 Cal. 172; *Miller* v. *Lux*, 100 Cal. 615; *Utica Ins. Co.* v. *Lynch*, 11 Paige, 520; *In re Hilliard*, 83 Cal. 427; *Cruce* v. *Cruce*, 81 Mo. 684; *Schieffelin* v. *Stewart*, 1 Johns. Ch. 620; 7 Am. Dec. 507; *Adams* v. *Lambard*, 80 Cal. 426, 439; *Falkner* v. *Hendy*, 80 Cal. 645; *Moyer* v. *Fletcher*, 56 Mich. 508; *In re Ricker's Estate*, 14 Mont. 153; 2 Perry on Trusts, sec. 468; 2 Story's Equity Jurisprudence, sec. 1277 c; 7 Am. & Eng. Ency. of Law, 426–29; *Clarkson* v. *De Peyster*, 1 Hopk. Ch. 313; 1 Perry on Trusts, sec. 468; 2 Spence's Equity Jurisprudence, 920; *Docker* v. *Somes*, 2 Mylne & K. 666; *Barney* v. *Saunders*, 16 How. 535; *Walls* v. *Walker*, 37 Cal. 424; 99 Am. 296.) When a guardian makes a loan in good faith for the benefit of his ward, and a loss results, he is not chargeable with interest on the amount of the loss. (Perry on Trusts, sec. 458; Pomeroy's Equity Jurisprudence, sec. 1070; *Ellig* v. *Naglee*, 9 Cal. 695; *Estate of Holbert*, 48 Cal. 630; *Wheeler* v. *Bolton, supra; Lovell* v. *Minot*, 20 Pick. 116; 32 Am. Dec. 206; *Clark* v. *Garfield*, 8 Allen, 427; *Kinmonth* v. *Brigham*, 5 Allen, 277; *Barney* v. *Parsons*, 54 Vt. 623; 41 Am. Rep. 858; *Slanter* v. *Favorite*, 107 Ind. 291; 57 Am. Rep. 106; *Harvard College* v. *Amory*, 9 Pick. 461; *Jack's Appeal*, 94 Pa. St. 371; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *State* v. *Slevin*, 93 Mo. 253; 3 Am. St. Rep. 526; *Landmesser's Appeal*, 126 Pa. St. 115; 12 Am. St. Rep. 854.) Where a guardian makes an investment for the benefit of his ward in good faith, but without order of court, he should not be charged compound interest on the amount of

such investment.   (*Wheeler* v. *Bolton, supra; Adams* v. *Lombard, supra; Mather* v. *Heath* (Mich.), 15 N. W. Rep. 126; *In re Ward's Estate,* 41 N. W. Rep. 434; *De Peyster* v. *Clarkson,* 2 Wend. 77; *Dunscomb* v. *Dunscomb,* 1 Johns. Ch. 508; 7 Am. Dec. 504; Perry on Trusts, secs. 453–62.)

*Daggett & Adams,* for Respondent.

The facts in relation to the loan of the nine hundred and thirty-six dollars shows gross negligence tantamount to fraud.   (Civ. Code, secs. 2229, 2234, 2236, 2237; *Estate of Stott,* 52 Cal. 406; *Gunter* v. *Janes,* 9 Cal. 643; *Estate of Holbert,* 39 Cal. 601; *Barney* v. *Saunders,* 16 How. 539; *Schieffelin* v. *Stewart,* 1 Johns. Ch. 620; 7 Am. Dec. Dec. 507; 2 Story's Equity Jurisprudence, sec. 1277; 1 Perry on Trusts, sec. 471; *In re Thompson,* 101 Cal. 354; *Appeal of Royer,* 11 Pa. St. 36; *Lloyd* v. *Barr,* 11 Pa. St. 41; 1 Story's Equity Jurisprudence, sec. 187.) The investment of twelve hundred and fifty dollars of the ward's money in land, and taking the land in the name of a person other than the ward for the purpose of transferring it without order of court, was a gross violation of duty by the guardian.   (Civ. Code, secs. 2229, 2236, 2237, 2337; 2 Kent's Commentaries, 230; 2 Story's Equity Jurisprudence, sec. 1357; *Attridge* v. *Billings,* 57 Ill. 489; *Appeal of Royer, supra; Davis' Appeal,* 60 Pa. St. 118.)   Having commingled the funds of the ward with his own and used the same in his business, it was proper to charge the guardian ten per cent interest per annum, compounded annually.   (*In re Thompson, supra; Shurtleff* v. *Rile,* 140 Mass. 213; 2 Kent's Commentaries, 11th ed., 231, note c; *Harland's accounts,* 5 Rawle, 331; 2 Pomeroy's Equity Jurisprudence, sec. 1076.)

VAN FLEET, J.—Appeal by J. M. Fox, the guardian of said minor, from an order settling his final account.

But three exceptions are urged, and while all they involve the same general inquiry, that is, as to the propriety of the rate of interest charged by the court below against

the guardian upon certain items of the account, they each relate to a different item of the account, and, as a different rule of accountability was applied in each instance, it will be necessary to examine them separately. The facts upon which the several exceptions are based appear in the findings of the court, the appeal being upon the judgment-roll, unaccompanied by the evidence.

1. The court found substantially that during the whole time that said J. M. Fox has been the guardian of said minor he has commingled the moneys belonging to his ward with his own, and used said money in his own business, and deposited it in the bank in his own name, and has never at any time kept the same separate and distinct from his own money. That according to the testimony of the guardian, he could not loan the money all the while, and he thought it better to use the money when he could, and charge himself with regular interest; a good deal of the time it was not used at all, but sometimes he used it, and it was kept mingled with his own funds; that under the advice of his counsel, in making up his final account, he charged himself with legal interest; that he never made any profit on it; on the contrary, it was a loss; that he may have made a profit in his business in which the money was used; he did not know. And the court finds that said guardian acted in good faith, and without any intent to defraud said ward, and at all times when said ward, or his parents for him, made demands on the guardian for money for the support and maintenance of the ward, such demands were always complied with, and the money for such purposes on hand. The court further found that from 1874 up to the time of the trial, the current rate of interest charged on money loaned in Tulare county has been from ten to twelve per cent per annum.

As a conclusion of law from these facts, the court held that on all of the moneys of his ward thus mingled and used with his own (the specific items of which it is not pertinent here to state), "said guardian is chargeable

with interest at the rate of ten per cent per annum, compounded annually"; and in the decree the guardian was charged accordingly.

The objection urged to this action of the court is that the rate of interest charged is wholly unauthorized by law; that upon the facts found appellant is only liable to pay interest at the rate established by law, that is, seven per cent, computed with annual rests. In this contention we think it very clear the appellant must be sustained. The general rule, now thoroughly well established in this state, as to the limit of the liability of a trustee for mingling the trust funds with his own, and their use in his own business, where it is not shown that a larger profit was realized therefrom, is the return of the principal with legal interest thereon, compounded annually. This rule is applicable alike to guardians and executors as to other trust relations.

In *Estate of Stott*, 52 Cal. 403, where the facts were not essentially dissimilar from those found in the case at bar, showing that the executor had mingled the funds of the estate with his own and those of the firm, and from time to time had employed them in his business, but there was no evidence of actual profits, it was held that the trustee was responsible for presumed profits upon the moneys so employed, and that the general rule in such cases was that he should be charged with legal interest, with annual rests. (Citing 2 Redfield on Wills, 886; 2 Williams on Executors, 1670, and note.)

The rule there announced was followed in *Estate of Clark*, 53 Cal. 359, where, upon similar facts, it is held that the rule in such cases is to charge the executor with legal interest, compounded with annual rests. In the latter case the court below had charged the executor upon the facts found, with interest at one and a quarter per cent per month, that being the current commercial rate during the period the fund was held, but this action of the court was reversed, and the above rule directed to be applied.

The doctrine was reaffirmed in *Estate of Hilliard*, 83

Cal. 423; and in the later case of *Miller* v. *Lux*, 100 Cal.
609, where the executors had made an improper appro-
priation of the funds of the estate to the use of one of
their number, the same rule was upheld and applied.
(See, also, *Wheeler* v. *Bolton*, 92 Cal. 159; *Adams* v. *Lam-
bard*, 80 Cal. 426.)

We think the facts of this case bring it squarely within
the doctrine thus established. Certainly our attention
has not been drawn to any element in the case making
a different rule applicable. The court below seems to
have proceeded upon the theory that because it appeared
that the current conventional rate of interest prevailing
in Tulare county during the period for which the
guardian is charged was from ten to twelve per cent per
annum, the former rate should be applied as a just
measure of the guardian's liability; but, as we have
seen, this view is erroneous. It is not even found that
the funds could have been loaned at any such rate, or
at all. Had it appeared that the guardian could, during
the time he used the funds of his ward, have loaned
them at the rate charged, a different rule might apply
(*Estate of Holbert*, 39 Cal. 597); and, of course, if the
facts showed that the trustee had benefited to that ex-
tent from his use of the funds, he would be chargeable
therefor, upon the well-established rule of equity that
he will not be permitted to make any profit out of his
office.

It was upon this principle that the case of *In re
Thompson*, 101 Cal. 349, much relied upon by respond-
ent, was decided. There it appeared that the fund with
which the moneys of the estate were mingled earned
about eleven per cent per annum net, and it was held
that, in view of this fact, the court below did not err in
charging the delinquent trustee with interest at the rate
of ten per cent. But, in the absence of such facts, the
limit of his responsibility is as above shown. And even
the adoption of the rule of presumed profits to the ex-
tent of charging legal interest is " not for punishing the
delinquent trustee, but for the purpose of attaining the

actual or presumed gains, and to make certain that nothing of profit or advantage remains to the trustee, except, perhaps, his commission or compensation." ( *Wheeler* v. *Bolton, supra.*)

2. The pertinent facts found by the court, as to the second item involved, are that on May 27, 1876, the guardian made a loan of nine hundred and thirty-six dollars of the ward's funds to one Ashton for twelve months, with interest at the rate of one and a half per cent per month, for which he took a note secured by a mortgage upon certain real and personal property. The loan was made without an order of court authorizing it, and the securities taken in the name of Fox without mention of his trust capacity, but it was made in good faith for the benefit of the ward, and upon property which at the time afforded ample security. Immediately after the loan, however, the mortgaged property depreciated in value, which fact was known to Fox, but it is found that, if the mortgage had been foreclosed in 1877 (the year of its maturity), it would not have realized any more than when, subsequently in 1880, foreclosure was had, and the property brought, exclusive of expenses of sale, four hundred and fifteen dollars and seventy cents, which sum was recovered into the hands of the guardian on August 2d of that year. Prior to this (but just when is not found) Ashton had left the state, and Fox had written to him a number of times demanding payment, and also endeavored to get him to make a deed of the property to the guardian without requiring foreclosure, but without avail. These were the only efforts made to recover the money prior to the foreclosure proceedings.

When the property was first put up for sale under the decree it was bid in by the guardian for three hundred dollars, but subsequently he refused to take it, and it was resold with the result above stated. Subsequent to the sale Fox made efforts to collect the deficiency judgment, but was unsuccessful, as Ashton had no property out of which it could be made.

It is also found that if the guardian had purchased

the property on foreclosure sale for the benefit of the ward and held it, "that at some time between then and now the principal of said loan, and a part of the interest on the same, could have been saved to his ward."

Upon these facts the court charged the guardian with nine hundred and thirty-six dollars, the principal of the loan, and interest thereon from May 27, 1876, the day of making the loan, down to January 12, 1895, the date of accounting, at the rate of twelve per cent per annum, compounded annually, the interest amounting to the sum of six thousand eight hundred and four dollars and three cents.

Appellant contends that the action of the court in the premises was erroneous; that under the facts disclosed he was only liable to legal interest, with annual rests upon the four hundred and fifteen dollars and seventy cents of the principal recovered, which was taken and used by him from the date of its recovery; and that upon the balance of five hundred and twenty dollars and thirty cents of the principal sum, which was lost, he is not chargeable with any interest whatsoever. No complaint is made of the fact that appellant is charged with that portion of the principal lost, and we may assume that the action of the court in that regard is correct, although under the facts it is not clear that he would have been so chargeable, since the mere fact of loss, independently of the question of negligence, does not charge the trustee as matter of law with liability therefor. It depends upon the circumstances under which the loss occurred. ( *Wheeler* v. *Bolton, supra.*)

As to the interest, however, not only in the rate imposed, but in the charging of any interest upon that portion of the principal sum lost, we think the court was in error. It does not clearly appear upon what theory the court proceeded in fixing the rate of interest charged, but whatever it may have been we know of no principle which, applied to the facts found, will support it. The court not only finds that the loan was made in good faith, and for the benefit of the ward, but does not

in terms find that the guardian was guilty of negligence. Nor does it find facts from which negligence must necessarily be inferred. The fact upon which some stress seems to be laid by counsel for respondent, as evidencing improper conduct and purpose, that the loan was made by Fox in his own name and not as guardian, while not to be commended, loses any baleful significance that might otherwise attach to it, by the finding that the transaction was without taint of bad faith, and was for the benefit of the ward. The court distinctly finds that nothing was lost to the estate by failure to take earlier steps to foreclose, and fails to find, at least distinctly, any want of diligence in the efforts made to recover the loan. And we see nothing necessarily showing a lack of ordinary care and judgment in the premises. The fact that Fox did not wish to take the property at the foreclosure sale and hold it indefinitely, is not in itself significant of neglect or want of care. Nor does the court find that he was negligent in not having done so. It is simply found that, had he done so, something more could have been eventually saved. But mere error of judgment is not sufficient to subject the trustee to punitive responsibility. As said by Mr. Pomeroy: "The law does not cast upon the trustee an extraordinary duty, nor demand an extraordinary care, nor hold him liable for mere error of judgment. Much less does it make him an insurer of the property. If he has exercised the care and judgment of ordinarily prudent men in their own affairs, he will not be chargeable for his mere errors of judgment, nor for accidental injuries and losses." (Pomeroy's Equity Jurisprudence, sec. 1070.) And again that learned writer says in section 1071: "If, however, an investment is made with the exercise of reasonable care, diligence, and business prudence, in the form, manner, and securities approved of by the rules of equity, a trustee will not be liable for losses which may occur through the destruction or depreciation of values."

In *Ellig* v. *Naglee*, 9 Cal. 695, it is said: "Trustees act

CXI. CAL.—29

for the benefit of others, and not for themselves, and the fair exercise of their judgment should be a protection to them. For supine negligence or willful default will render them liable; but to make them liable for mere errors of judgment would tend to discourage good and prudent men from taking any trusts." The case is not distinguishable in principle from *Estate of Holbert,* 48 Cal. 630, where the executor of the estate had improvidently, although with honest purpose, made a loan on a piece of real estate, without examining the records, upon which a mortgage already existed for nearly the entire value of the property, as a result of which the amount of the loan was in large part lost to the estate. In reversing the action of the court below in charging the executor with the amount lost, with interest added at the conventional rate, it was said: "Of course the executor, upon settlement of his accounts, is not to be charged with interest at the rate stipulated to be paid by the borrowers. If such a rule could ever be properly applied it could only be in a case where *mala fides* was established, and here, as we have seen, there was none. Nor do we think that under the circumstances the executor should be charged with interest, even at the statutory rate. It does not appear by the record that he could, in the exercise of reasonable diligence, have loaned it to others at that rate, or at any rate of interest whatever, during the time it has remained in the hands of the borrowers. The basis of accountability under such circumstances is the same as though it had been kept on hand by him for the purpose of making a loan, but without the opportunity of doing so, in which case he would not have been chargeable with interest. The executor should, therefore, have been held liable only for the sum of seven hundred and thirty-two dollars, which is the balance of the loan remaining uncollected after applying the four hundred and sixty-eight dollars actually received by the executor."

Applying these principles to the facts before us, the appellant should not have been charged with interest

upon the part of the principal sum not recovered.  As
was said by the supreme court of Pennsylvania in a
similar case, where it was found that the guardian in
making the loan had acted in good faith, and with ordi-
nary care and prudence: "It is, of course, a great hard-
ship that the appellant should lose so large a portion of
her patrimony, but it would be a still greater hardship
to compel her guardian to make good the loss, unless it
was occasioned by his carelessness.  It has been said
that the harshest demand that can be made in equity is
to hold a trustee answerable for what was never in his
hands, or for a loss not caused by his willful default."
(*Jack's Appeal*, 94 Pa. St. 371.)

Upon the four hundred and sixteen dollars and sev-
enty cents recovered, appellant is, under the principles
announced in the first part of this opinion, properly
chargeable with interest at the legal rate, compounded
annually, from August 2, 1880, the date of recovery, for
the reason that he has, admittedly, since said date,
mingled and used the amount so recovered with his own
funds.  But he was not, for the reasons stated, charge-
able with the rate imposed by the court below.

3. As to the third and last item, the court found that
on November 20, 1884, the guardian, at the request of
the mother and stepfather of the minor, with whom the
ward resided during his minority, purchased eighty
acres of land for the ward with the ward's money, pay-
ing therefor twelve hundred and fifty dollars.  This was
done because both the parents and the guardian be-
lieved that it was a good investment for the ward.
The investment was made without order or authority
of court.  Ever since the purchase of the land the par-
ents of the minor have had the possession, use, and
benefit thereof, and the guardian has never derived any
rents, issues, or profits therefrom, but has paid all the
taxes thereon.  The title was taken in the name of the
guardian, so that the parents of the ward and the guard-
ian might sell the land without an order of court, and
the guardian retained the title for the benefit of the

ward until July 23, 1893, when he executed and acknowledged a deed granting and conveying said land to the ward. This deed has not been delivered, but the guardian has since been, and is, ready to deliver the same. The mother of the ward arranged for and knew of the execution of the deed. The ward on February 4, 1895, disaffirmed and refused to ratify the purchase of the land. Upon the facts the court held that the ward was not bound by said purchase, and required the guardian to account for the twelve hundred and fifty dollars thus invested, with legal interest, compounded annually, from November 20, 1884, the date of the purchase, to January 12, 1895, the date of the accounting. The only complaint made against this action of the court is that there was error in requiring the interest to be compounded, and in that particular appellant must be sustained. Where, as here, the trustee has been guilty of no willful breach of duty, or any intentional violation of the obligations of his trust, he is not to be charged with compound interest.

"The general rule," says Mr. Justice Harrison, in *Wheeler* v. *Bolton, supra,* "applicable to an executor, as well as to any other trustee, is that, except in cases in which he has been guilty of some positive misconduct or willful violation of duty, he is not to be charged with compound interest." · And in *Adams* v. *Lambard, supra,* it is said: "It is a general rule that where the omission of the trustee is due to simple negligence, without any actual intent to cheat or defraud, simple interest alone is allowed the *cestui que trust* on the trust funds; but, if the omission is willful, compound interest is allowed."

In this case the trial court has found against any intentional or willful dereliction of duty on the part of the guardian; that finding is conclusive upon us, and we are not at liberty, even if so disposed, to put the construction upon the acts of the guardian contended for by respondent.

The order is reversed, and the court below is directed

to settle appellant's account in accordance with the views herein expressed.

GAROUTTE, J., and HARRISON, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.