[L. A. Nos. 2552 and 2660. Department One.—October 7, 1910.]

TITLE INSURANCE AND TRUST COMPANY, as Executor of the Estate of Rosetta S. Ingersoll, Deceased, Respondent, v. C. K. INGERSOLL, Appellant.

Trust—Separate Property of Wife Invested by Husband—Accounting—Personal Judgment—Pleading.—In an action by a wife against her husband to impress a trust in her favor upon certain property purchased with her money and standing in his name, so far as it could be traced, to obtain an accounting from the defend-

ant, as trustee, as to the disposition of money intrusted to him for investment, and the income and profits thereof, and a judgment for the amount of money intrusted to him and not identified and traced to specific property, an allegation in the complaint, which was otherwise sufficient to charge the defendant as such trustee, to the effect that a large amount of money was due the plaintiff from the defendant, was sufficient to authorize the rendition of a personal judgment against him.

ID.—PRAYER OF COMPLAINT.—In such action, a prayer "for the recovery of such sums of money as may be in the hands of the defendant," is sufficient to authorize a personal judgment. A prayer for general relief would have sufficed.

ID.—ANSWER—EXTENT OF RELIEF ALLOWABLE.—Where an answer is filed to a complaint, the court may go beyond the prayer of the complaint and grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issues.

ID.—FORM OF JUDGMENT IN ACTION FOR ACCOUNTING.—In an action at law for an accounting, it is the proper practice to give a personal judgment for the balance of money found to be due the plaintiff after such accounting is had. In equity, a personal judgment might be rendered, if a more specific remedy were not practicable.

ID.—TRACING TRUST FUNDS—IMPRESSING TRUST ON SPECIFIC PROPERTY —PERSONAL JUDGMENT FOR FUNDS NOT TRACEABLE.—The plaintiff, upon alleging the trust relation, the receipt of trust funds, and the failure to account, had the right to recover in one action the specific property into which a portion of the fund is traced, and a personal judgment for the remainder which cannot be identified. The plaintiff, however, cannot have a judgment declaring the defendant a trustee of specific property bought with trust funds, and decreeing such property to be the property of the plaintiff, and also a personal judgment for the money invested by the defendant in that property.

ID.—POSSESSION OF WIFE'S PROPERTY—INTENT TO MAKE GIFT—CONVERSION INTO COMMUNITY PROPERTY—PROOF OF GIFT.—The mere acquirement of the possession of the wife's separate property by the husband, and his subsequent management and control of it, with her consent, do not necessarily show an intent on her part to make a gift thereof to the husband, or to change its *status* to community property. Such facts, without explanation, raise a presumption that it continues to be her separate property, and that the husband takes it in trust for her. It devolves on the husband, who claims that it is a gift or loan, to prove the fact, which may be done by a showing of the nature of the transaction and the circumstances as well as by proof of an express agreement. There is nothing in sections 2221 and 2222 of the Civil Code, defining the circumstances under which a voluntary trust is created, that changes or affects this rule.

ID.—AGREEMENT TO INVEST ESTABLISHES EXPRESS TRUST.—Where a wife commits money of her separate estate to the custody and con-

trol of her husband, upon his agreement that he will keep it for her and invest it for her use in his own name, the trust established by the transaction is an express trust.

ID.—EVIDENCE AND FINDING NEGATIVING GIFT OR CONVERSION.—In the present case, the appellate court cannot say that the evidence was of such a character as to compel the conclusion that the money received by the defendant from his wife was a gift, loan, or contribution made by her to the community estate, and the finding of the court to the contrary is sustained.

ID.—SUFFICIENCY OF EVIDENCE—APPEAL.—In such case, the question whether the proof is sufficiently strong and convincing to establish a parol trust is primarily addressed to the trial court, and the appellate court must accept its determination as conclusive.

ID.—COMMINGLING TRUST FUND WITH COMMUNITY PROPERTY.—The fact that the trust money was in part commingled with the community property so as to destroy its specific identity does not necessarily destroy the trust as to that part, nor prevent its enforcement. It prevents the court from tracing it and declaring any specific parcel of property to be trust property, but the trust may still be enforced by a personal judgment against the husband for the amount of money not traceable into specific parcels.

ID.—TRUST NOT DESTROYED BY COMMINGLING.—Such commingling and loss of identity does not destroy the trust by converting the separate property into community property. It may be a circumstance tending to prove an agreement to convert it, but when the trial court, from all the circumstances, has found against the existence of any such agreement, the appellate court is bound by such conclusion.

ID.—STATUTE OF LIMITATIONS—REPUDIATION OF TRUST.—The trust to invest the wife's money being an express trust of a continuing character, the statute of limitations did not begin to run in favor of the husband until there had been a repudiation of the trust by him, or some act by him which amounted to a violation of the trust.

ID.—LACHES.—It being apparent in the present case, that no legal prejudice will be caused to the defendant by reason of the delay in the commencement of the action, nor by reason of a just enforcement of the trust, there is no ground for the application of the doctrine of laches.

ID.—INTEREST, WHEN ALLOWABLE—ACCOUNTING.—A charge of compound interest, or simple interest, is authorized against a trustee where the transactions are of such a nature that it is extremely difficult or impracticable to ascertain with any degree of certainty what profit was realized from the trust fund. It is not made for the purpose of punishing the trustee, but to enforce the principle of equity that the trustee shall not be permitted to make any profit from the unauthorized use of the trust funds. The question whether any interest should be charged, and if any, how much, depends on the circumstances of the particular case, and they may be such that

a mere restoration of the property, or its value, without any interest, would be all that justice would require.

ID.—FAILURE TO KEEP ACCOUNTS.—Where the trustee has, in fact, prudently invested and managed the trust funds, although mingled and confused with his own money, the rule that he is to be charged with interest thereon upon an accounting rests principally, if not entirely, on his neglect in failing to keep accurate accounts and on the fact that by his neglect the actual profits realized have been made difficult to ascertain.

ID.—INTEREST, WHEN NOT ALLOWABLE—COMMINGLING WITH APPROVAL OF BENEFICIARY.—When the trustee, notwithstanding his failure to keep the trust funds separate from his own, is able to show that the mingled fund was well managed and wisely invested and what the profits are, or that the profits actually made do not exceed a certain amount, all the reasons for imposing a charge of interest exceeding such profits are wanting, and justice requires that the charge be limited to the equivalent of the gains actually made. This rule is particularly applicable, where the commingling of the trust funds was made with the consent and approval of the beneficiary, even if the beneficiary did not know that the trustee was not keeping a separate account of the trust funds.

ID.—RELIEF ALLOWABLE IN PRESENT CASE.—Under the facts shown in the present case, the wife is entitled to recover only a sum equal to such proportion of the value of the property held by her husband at the time the suit was begun, as the money which she contributed to the purchase price thereof bears to the whole purchase price. If relief could be given by allotting to her such proportionate interest in the property itself, perhaps that method would be preferable. If that cannot conveniently be done, then she should be given a personal judgment for that proportion of its present value, and for nothing more.

ID.—PURCHASE OF LAND PARTLY WITH TRUST FUNDS—RESULTING TRUST.—Payment by the husband of a part of the price of real property purchased by him with money of the wife held in trust by him, was the same, in legal effect, as between the parties, as a payment by her. It created a resulting trust in her favor for an interest which equaled her proportion of the price.

ID.—DUTY OF HUSBAND TO MAINTAIN WIFE.—The law imposes upon a husband the duty to maintain his wife. This means that it is his duty to furnish her money to pay such of the living expenses as he leaves it to her to look after, or to pay them himself. In the absence of evidence showing the fund from which he paid them, it will be presumed to be of community funds, rather than from his separate estate. Her separate property, acquired by devise or succession, will not be resorted to, even for her support, except where the community property fails, and he refuses to pay or supply from his separate estate. But she may consent to the use of her own separate estate, and if so, it should be charged to her accordingly.

APPEALS from judgments of the Superior Court of Los Angeles County and from orders refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Valentine & Newby, for Appellant.

Stephens & Stephens, for Respondent.

SHAW, J.—The record before us presents appeals in two different cases bearing the same title. One is a case in the superior court of Los Angeles County numbered, in that court, 42,663. The other is a case, numbered, in that court, 48,027, which was begun during the pendency of the case first mentioned. The first mentioned case was before this court upon former appeals by the plaintiff from a judgment in favor of the defendant and from an order denying plaintiff's motion for a new trial. That judgment and order were reversed because of the erroneous admission of evidence of the good character of the defendant (*Title etc. Co.* v. *Ingersoll,* 153 Cal. 1, [94 Pac. 94].)

The first case involved the question of the investment by the defendant of certain moneys belonging to the separate estate of the deceased, who was his wife, and its principal objects appear to have been to impress a trust in her favor upon the property in which her money was invested, so far as it could be traced; to obtain an accounting from the defendant, as trustee, as to the disposition of the trust money, and the income and profits thereof; and a judgment for the amount of money intrusted to him and not identified and traced to specific property. In the course of the trial it was discovered that a certain part of the separate estate of the wife had been used to purchase a parcel of real estate, not described in the complaint, and thereupon the second suit was begun to establish a trust in behalf of the deceased as to an interest in that lot equal to the proportion which her part of the purchase money bore to the whole price thereof.

The two cases were consolidated and tried together. The judgment in each case was in favor of the plaintiff, and a new trial was denied. The defendant has appealed in each

case from the judgment and from the order denying his motion for a new trial.

The first action was begun on October 16, 1903, by Rosetta S. Ingersoll in her lifetime. On her death, the present plaintiff was substituted in her place. The defendant and the deceased were married in the year 1875, and continued in the relation of husband and wife until her death, which occurred on November 6, 1903. They never had any children. The complaint avers that during the marriage Rosetta S. Ingersoll received sums of money belonging to her separate estate, aggregating about thirty thousand dollars, all of which, with the consent and acquiescence of the said wife, was received by the husband and invested by him, in his own name, in trust for her use and benefit, in pursuance of an agreement and understanding between them that he should receive and hold said money and all property in which it might be invested, if invested in his name, in trust for her use and benefit. It was alleged that part of said money was invested by him in certain described real property, the title to which, in accordance with said agreement, was taken and still remains in his name, that other parts thereof have been invested by him in other property, the character and description of which is unknown to plaintiff, that he has received large sums as rents, issues, and profits of said separate estate in his control, that he has never rendered an account to plaintiff, and that a large amount of money is due her from him, arising out of her said funds. The judgment was that the plaintiff recover of the defendant the sums of money of the wife's separate estate found to have been received by him in trust for her and not traced into any specific property, with compound interest at six per cent per annum thereon, amounting in the aggregate to $40,764.76, and costs of suit, and that he holds certain described bank stock in trust for her estate, that he account to the estate for the dividends received thereon and transfer the stock to the plaintiff as executor thereof.

The defendant claims that the facts stated in the complaint do not authorize a personal judgment against the defendant. The complaint alleged that a large amount of money was due the plaintiff from the defendant. No point being made to the effect that a matured claim was not stated, this allegation, in connection with the other averments above given is sufficient

to authorize a personal judgment for such sum as the court found had been received by him in trust for her and which was not accounted for by a showing from him that it had been invested in some specific property for her use. (1 Cyc. 436, 438, 448; *Green* v. *Brooks,* 81 Cal. 333, [22 Pac. 849].) The point that there is no prayer for personal judgment, except "for the recovery of such sums of money as may be in the hands of the defendant," and that this, if strictly construed, would not include any money which he had expended in the purchase of property to which the court could not trace it, but only that found to be still on hand, is without substantial merit. A prayer for general relief would have sufficed. (1 Cyc. 439.) Money which he had received in trust for her, and which he had expended in investments in his own name, in a manner which he did not disclose at the trial, so that it could not be traced, would be money "in the hands of the defendant," within the meaning of that phrase as used in the prayer of the complaint. It was money thus in his "hands" which constituted the larger part of the sum recovered. Besides this, there was an answer to the complaint, and in such a case the court may go beyond the prayer of the complaint and grant the plaintiff "any relief consistent with the case made by the complaint and embraced within the issue." (Code Civ. Proc., sec. 580.) In an action for an accounting it is the proper practice to give a personal judgment for the balance of money found to be due the plaintiff after such accounting is had. (*Smith* v. *Smith,* 88 Cal. 577, [26 Pac. 356].) It was the usual relief in an action at law for an accounting. (1 Cyc. 408, 413.) In equity, since the court there has larger powers than strictly at law, other and more effective relief may be given, but the court may render a personal judgment if a more specific remedy is not practicable. (1 Cyc. 416.)

It is not a case where the plaintiff is required to elect between a suit in equity to trace trust property and recover it *in specie,* and an action to recover a personal judgment for the amount of trust funds converted by a trustee. In cases against an estate of a decedent in course of administration this necessity sometimes arises, because an action to declare certain property, held by the decedent in his own name, the property of the plaintiff, as beneficiary of a trust imposed on the decedent, is not, technically considered, an action upon a claim

against the decedent's estate, whereas an action to recover trust money converted by him to his own use, the identity of which cannot be traced, is an action upon a claim against the estate and cannot be maintained unless a claim therefor has been presented to the administrator for approval. Cases of this character have no application to the case at bar. The plaintiff had the right to allege the trust relation, the receipt of trust funds, the failure to account, and to recover in one action the specific property into which a portion of the fund is traced, and a personal judgment for the remainder which cannot be identified. The beneficiary of a trust, of course, cannot have a judgment declaring the defendant a trustee of specific property bought with trust funds, and decreeing such property to be the property of the beneficiary, and also a personal judgment for the money invested by the defendant in that property. So far as the trust fund is traced to specific property which the beneficiary elects to take, the part of the fund thus accounted for constitutes a credit on the general account and personal judgment can be given only for the balance. This was the course followed by the court. There is no objection to the practice of trying the entire case in one action, and no inconsistency in the claims of plaintiff, provided the account is thus separated and judgment is not twice given for the same money.

The defendant contends that the evidence is insufficient to establish the finding that the money of his wife's separate estate was received by him in pursuance of an agreement or understanding that he was to hold and invest it for her use.

Upon this point, in the decision upon the former appeal, it was said that the mere acquirement of the possession of the wife's separate property by the husband and his subsequent management and control of the same, all with her consent, do not necessarily show an intent on her part to make a gift thereof to the husband, or to change its *status* to community property, but that the effect of these facts, without explanation, was to raise a presumption that it continues to be her separate property and that the husband takes it in trust for her; that it devolves on the husband who claims that it is a gift or loan, to prove the fact, but that this may be done by a showing of the nature of the transaction and the circumstances as well as by proof of an express agreement. (153

CLVIII Cal.—31

Cal. 5, [94 Pac. 94].)   These propositions are well supported
by the authorities cited in the former opinion.   It is unnec-
essary here to repeat them.   Even if, as contended by appel-
lant here, they were unnecessary to the decision and do not
constitute the law of the case on the present appeal, we are
entirely satisfied with the law as there stated.   We do not
find anything in sections 2221 and 2222 of the Civil Code
that changes or affects this rule.   They declare that the acts
or words of the parties must indicate "with reasonable cer-
tainty" the intention to create and accept a trust and the
subject, purpose, and beneficiary thereof.   The effect of the
authorities referred to is that the circumstances above detailed
are sufficient to meet these tests.   The code sections merely
declare the law as it previously existed.   That the money
in question was the separate estate of Mrs. Ingersoll, that the
defendant was her husband and that he received, invested,
managed, and controlled it, in his own name, with her consent
and in accordance with her wish, are facts established by his
own testimony on the trial.   The presumption of a trust rela-
tion therefore arises, and the trust must be deemed to have
been established, unless there was other evidence of such a
character that the court below was bound to give it sufficient
force and weight to overthrow that presumption.

It is insisted by the appellant, however, that the cases cited
in the former opinion all relate to involuntary trusts, that
the principle of evidence established thereby has no applica-
tion to express trusts, that the only trust claimed to exist
in the case at bar is an express trust, since if an involuntary
trust, only, is shown, the plaintiff's action is clearly barred
by the statute of limitations.   We cannot agree with this
contention.   Where a wife commits money of her separate
estate to the custody and control of her husband, upon his
agreement that he will keep it for her and invest it for her
use in his own name, the trust established by the transaction
is an express trust.   The substance of the rule stated in the
former opinion is that when proof is made of the circum-
stances stated, namely, that she committed her money to his
keeping and control and that he subsequently managed and
controlled it, all with her consent, these circumstances unex-
plained, raise an inference that there was an agreement be-
tween the two that he should take care of it for her and

invest it for her use, and that if it further appears that he invested it in his own name with her consent, and nothing further is shown, an inference is raised that he has agreed to hold it in his name in trust for her. Such a trust is an express trust. The facts stated, and the reasoning of the decisions in the authorities referred to, show that the rule is not confined to cases of involuntary trusts.

The finding of the court implies that the defendant did not succeed in showing that the money of his wife was received by him as a gift or loan from her to him, or as a contribution from her to the community estate; that the evidence in his behalf did not rebut the aforesaid presumption. We cannot say that the evidence was of such a character as to compel the conclusion that such a gift, loan, or contribution was made by her. Aside from his express denials, it is much more consistent with the inference made by the court that there was an agreement by him to hold it in trust for her. In his own testimony, which was extended to great length and occupied many days' time in the giving, he does not mention any word or act of his wife indicating any intention on her part to make a loan to him, or a gift either to him or to the community estate. In the absence of such intent the law would make him her custodian or trustee and the equitable title to the property would remain in her. The relations of the parties and their conduct with respect to her money justified the court in preferring the inference that the understanding was that he was to act as trustee for her in the management and disposition of it. He expressly denied that there ever was any such understanding or agreement between them. But his conduct as a witness, so far as we can judge from the record, was such that the court may have discredited him on all points wherein his testimony was in his own favor if the conditions were such that contradictory evidence could not be produced. The court was so impressed by this conduct that it made a finding stating that upon the trial he had "willfully and knowingly given false testimony concerning matters material to the issue." There was some evidence in support of this statement, and, although it is not a material finding, it shows that the court applied the doctrine that "a witness false in one part of his testimony is to be distrusted in others." (Code Civ. Proc., sec. 2061.) Our conclusion is

that the evidence is sufficient to support the findings on the subject of the trust.

Appellant contends that even if the evidence would have been sufficient in an ordinary case, it is not of the clear and convincing character necessary to establish a parol trust, or to overcome the presumption that the property was community property. The proof that the money, when received, was her separate estate, was positive and indisputable. With respect to the trust it was not so strong. But upon a case of this kind, as in others, the question whether the proof is sufficiently strong and convincing is primarily addressed to the trial court, "and this court must accept the determination of the trial court thereon as conclusive." (*Brison* v. *Brison,* 90 Cal. 334, [27 Pac. 186]; *Couts* v. *Winston,* 153 Cal. 688, [96 Pac. 357]; *Wadleigh* v. *Phelps,* 149 Cal. 637, [87 Pac. 93].) The rule "does not mean that the evidence in the record must be entirely plain and convincing to an appellate court. . . . It will not disturb the finding of the trial court . . . where there is substantial evidence warranting a clear and satisfactory conviction to that effect." (*Wadleigh* v. *Phelps,* 149 Cal. 637, [87 Pac. 93].) We cannot here give a statement of all the evidence upon which the trial court gave its decision. It was doubtless based in part on the demeanor of the defendant as a witness on the trial. It is sufficient to say that we cannot say that the trial court disregarded this rule in making its findings, (*Mahoney* v. *Bostwick,* 96 Cal. 58, [31 Am. St. Rep. 175, 30 Pac. 1020]), and that, considering the obligations of the husband to the wife, the decision does not appear to be unjust.

The fact that the trust money was in part commingled with the community property so as to destroy its specific identity does not necessarily destroy the trust as to that part, nor prevent its enforcement. It prevents the court from tracing it and declaring any specific parcel of property to be trust property, but the trust may still be enforced by a personal judgment against the husband for the amount of money not traceable into specific parcels. (*Lathrop* v. *Bampton,* 31 Cal. 23, [89 Am. Dec. 141].) The cases cited by the appellant, *Dimmick* v. *Dimmick,* 95 Cal. 323, [30 Pac. 547]; *Reid* v. *Reid,* 112 Cal. 278, [44 Pac. 564]; *Estate of Boody,* 113 Cal. 686, [45 Pac. 858]; *Davis* v. *Green,* 122 Cal. 366, [55 Pac. 9];

*Hamilton* v. *Hubbard,* 134 Cal. 604, [65 Pac. 321, 66 Pac. 860], to the effect that specific parcels cannot be charged with a trust or declared the wife's separate estate, where the wife's money has been commingled with other property and cannot be identified and traced into the specific parcels, are not contrary to this doctrine. Nor does such commingling and loss of identity destroy the trust by converting the separate property into community property. It may be a circumstance tending to prove an agreement to convert it, but when the trial court from all the circumstances, has concluded that it was not mingled in pursuance of any agreement to make it community property, but was mingled by the husband after he had received it in trust, we are bound by this conclusion. The only effect of such commingling, in that case, is to prevent identification, and the husband, as holder of the community property, with which he has mingled the trust property, is liable personally for the trust money. Appellant suggests that the rights of creditors of the community, or of third persons dealing with the husband, might be jeopardized by this doctrine. The answer is that no such rights are here involved and that if third persons have equities superior to those of the wife they would be fully protected and enforced in a proper action.

We do not find anything in the decision in *Elmore* v. *Elmore,* 114 Cal. 516, [46 Pac. 458], that is inconsistent with our conclusions here. In that case the facts found showed that there was no trust relation, as alleged, and the decision merely holds that a personal judgment as for money had and received, in a case based on a complaint to enforce a trust, was a judgment upon a cause of action not alleged. The question of the proper form of judgment and the relief to be given in an action for an accounting was not discussed.

The defense of the statute of limitations is made and it is also claimed that the action is barred by laches. These defenses are necessarily based on the proposition that the trust alleged and found was an involuntary trust, and that, consequently, the statute of limitations began to run as soon as the trust arose. But it is apparent from the allegations, the findings and the evidence, that if there was any trust at all in favor of the wife, it was an express trust. The husband was to take her money, keep it for her, invest it for her, and apply

it to her use, recognizing, of course, her interest and rights in the property into which it went and her right to reclaim the money or property at any time she saw fit. The evidence shows that they lived together in entire harmony and that she had the utmost confidence in him and in his method of caring for and using her money until some two or three months prior to the beginning of the action. There is nothing to show that he ever at any time repudiated the trust relation or refused to comply with such requests as she made regarding her money. She had no occasion or cause for beginning any suit against him concerning it and she appeared to be entirely satisfied with his management and disposition of it. They consulted together in regard to the investments he made from time to time and no disagreement arose between them. If it was a trust at all it was an express trust of a continuing character. In such cases it is well settled that the statute of limitations does not begin to run until there is a repudiation of the trust by the trustee, or some act by him which amounts to a violation of the trust. (*Baker* v. *Joseph*, 16 Cal. 176; *Butler* v. *Hyland*, 89 Cal. 582, [26 Pac. 1108]; *Odell* v. *Moss*, 130 Cal. 359, [62 Pac. 555].) There is no ground for the application of the doctrine of laches. It is plain that no legal prejudice will be caused to the defendant by reason of the delay, nor by reason of a just enforcement of the trust.

We have discussed and decided the preceding propositions arising in the original case, because they are either necessary to the present disposition of it, or will probably again arise upon a new trial in the court below. We now come to an objection which makes it necessary to reverse the judgment in part.

The court found that the defendant had received, of his wife's money, in trust, the sum of $20,972.44. Of this $1,590 was accounted for by showing that it was used to buy certain specific property as to which the court declared a trust in her favor. The balance of $19,382.44 remained, and there is no finding that any of it was used to buy any specific parcel of property held by the defendant. Upon this balance the court computed and charged to the defendant compound interest at six per cent per annum upon each sum received from the date it was received to July 31, 1909, the date of the judgment. This interest amounted to $21,382.32, and together

with the principal it made up the sum of $40,764.76 for which
the court gave personal judgment against the defendant. The
receipts of his wife's money began in 1888 and up to 1890 he
had received only $169 thereof. The findings state that in
1875, at the time of his marriage, he had $10,000 worth of
property, including a farm in Kansas worth $5,000, that in
1885, with his separate funds, he bought a ranch in California
for $3,780 which he sold in 1887 for $12,200. Nothing further
is expressly found in regard to the amount of his receipts from
his own separate property and community gains and earnings.
The evidence shows, without conflict, that for the years from
1885 to 1890, inclusive, from his income, there was an accumu-
lation of about $8,200 above living expenses, and that up to
1903 he had received from profits on the sale of his Kansas
farm $3,300, and from sources other than his wife's funds,
$2,200. His bank books and diaries show total receipts
amounting to over $82,000, in addition to those from his wife.
But as much of this represents successive deposits of the same
money, it cannot be taken as the true amount of such receipts.
From the above facts, it is clear, however, that his separate
property amounted to at least $20,000 and that the accumula-
tions from community earnings added at least $10,000 more
to his estate. The findings state that during all these years
up to the time the suit was begun in 1903, he was an active
business man, engaged in divers lines of business, that he never
suffered any loss from bad loans or investments, that the liv-
ing expenses of himself and wife amounted to only $600 a
year, and that he never kept the different funds of his sepa-
rate estate, the community earnings and his wife's money sep-
arated in any way.

The only reasonable deduction from these facts is that his
separate estate and the community earnings must have con-
tributed at least as much to the accumulation of the property
held by him and in his name at the time the action was begun
as did the money received by him from his wife. But the
court further finds that, at the time the suit was begun, the
only property of any character held by the defendant, or in
which he had any interest, consisted of seven parcels of real
estate, nine certificates of stock in various banks and $226.79
in money, and that for the real estate and stocks he had paid
prices amounting in the aggregate to $36,620. In this list of

prices there was included $840 that was also accounted for as money of his wife paid on the real estate involved in case No. 48,027 aforesaid, on account of which a trust was in that action declared to that extent in that property in her favor. Deducting that sum leaves $35,780 as the total aggregate price of all his interests and property. The land and stock purchased in the year 1900 and after, represented $28,740 of this sum. It will thus be seen that at the time the suit was begun, if the findings are correct, all the property the defendant had, as the result of his investments of over $30,000 of his own money and $19,382.44 of his wife's money mingled together, and his admitted careful management, was this list of property aggregating a total investment of $36,006.79. On account of this investment of these joint funds, more than three fourths of which was made after January 1, 1900, the court, in July, 1909, charged him with the sum of $40,764.76 as the result of his investment of his wife's money alone.

There is no finding nor evidence that the property in which it was found to be invested had increased in value after it was purchased. There is no averment or claim that the defendant had been guilty of any fraud or wrongdoing, or that he had mismanaged, misused, or squandered any of the money, either his own or that of his wife. The evidence shows that in addition to the six hundred dollars a year for living expenses there were other expenses, such as traveling expenses of the wife upon trips to the east and in California, and expenses of carrying on his farms and business, all of which were paid out of his income, but in the above estimate of net community contributions to the capital we have made ample allowances and deductions for these additional expenses.

The necessary conclusion is that the defendant did not obtain from his investments of the wife's money a profit equal to six per cent per annum compound interest. The case made by the record does not authorize such a charge. A charge of compound interest, or simple interest, is authorized where the transactions are of such a nature that it is extremely difficult or impracticable to ascertain with any degree of certainty what profit was realized from the trust fund. (*Estate of Clark*, 53 Cal. 359.) It is not made for the purpose of punishing the trustee, but to enforce the principle of equity that the trustee shall not be permitted to make any profit from

the unauthorized use of the trust funds. (*Miller* v. *Lux*, 100 Cal. 615, [35 Pac. 354, 639].) It is imposed "for the purpose of attaining the actual or presumed gains, and to make certain that nothing of profit or advantage remains to the trustee, except, perhaps, his commission or compensation." (*Cruce* v. *Cruce*, 81 Mo. 684, approved in *Wheeler* v. *Bolton*, 92 Cal. 172, [28 Pac. 558].) The question whether any interest should be charged, and if any, how much, depends on the circumstances of the particular case, and they may be such that a mere restoration of the property, or its value, without any interest, would be all that justice would require. (*Wheeler* v. *Bolton*, 92 Cal. 172, [28 Pac. 558].)

From these statements of the underlying reasons of the rule allowing interest in such cases it is plain that where the trustee has, in fact, prudently invested and managed the trust funds, although mingled and confused with his own money, the rule that he is to be charged with interest thereon upon an accounting rests principally, if not entirely, on his neglect in failing to keep accurate accounts and on the fact that by his neglect the actual profits realized have been made difficult to ascertain. When the trustee, notwithstanding his failure to keep the trust funds separate from his own, is able to show that the mingled fund was well managed and wisely invested and what the profits are, or that the profits actually made do not exceed a certain amount, all the reasons for imposing a charge of interest exceeding such profits are wanting, and justice requires that the charge be limited to the equivalent of the gains actually made. It is conceded in this case that the defendant was economical, prudent, energetic and thrifty in the management and investment of these funds and his own in common. As he has shown to the satisfaction of the court that the investments did not produce the interest charged, it follows that the charge was excessive and should not have been made.

In this connection and as a further reason for rejecting the charge of interest in excess of the actual profits shown, it is to be observed that the defendant, in thus mixing his wife's money with his own, did not violate the trust proven. She gave the money to him for the very purpose of having him deposit it with his own in the bank account kept in his name or in the names of both of them, and with the intention that

he should invest it in his own name. Some of it she herself deposited in the common account and all of it was so deposited with her knowledge, consent, and approval. In all this he was carrying out her wish and was not violating the trust, but was executing it. It further appears that she knew of the investments which he made of the common fund with which her money was thus with her approval mingled, and that she either approved of them, consented to them, or did not object to them. In these circumstances, it is clear that she has practically agreed to the actual investments made, and has no right to object to anything, except his neglect or failure to keep an account of her money separated from his own. When he shows, as he does show, if the findings state the case accurately, that the property he has on hand constitutes the result of these investments, she cannot, in justice be allowed to receive more than the equivalent of her just share thereof. It may be true, as she claims, that she did not know that he was not keeping such an account. But she does not charge him with any fraud or bad faith in this respect. She can only claim the results of the investments, since she admits that they were prudently made. The mere fact that they were mingled with his own does not entitle her to more, when he makes complete disclosure of all his transactions, or when the court is able to ascertain the actual profits that were realized from the entire fund. She occupies more nearly the position of a silent partner in a well-managed business enterprise, than that of a beneficiary of trust funds wrongfully mingled and used with his own by a trustee. Upon the facts shown, she is entitled only to a sum equal to such proportion of the value of the property held by him at the time the suit was begun, as the money which she contributed to the purchase price thereof bears to the whole purchase price. If relief could be given by allotting to her such proportionate interest in the property itself, perhaps that method would be preferable. If it cannot conveniently be done in that manner, then she should be given a personal judgment for that proportion of its present value, and not for anything more.

In addition to the findings in the first case showing the receipt of his wife's moneys which the court was unable to trace into any specific parcel of property, and on account of which

it gave her personal judgment against the defendant, the court found that he received seven hundred and fifty dollars of her money and with it purchased certain ten shares of stock in the First National Bank of Monrovia, in his name for her use. The judgment declared the defendant a trustee of this stock for the use and benefit of her estate. The claim that the finding that this money was received in trust by him is not supported by the evidence is disposed of by what has been said. It is sufficient to say further, on this branch of the case, that the evidence is sufficient to show that the price of the stock was paid out of the money received from her separate estate.

The matter involved in the second case, numbered 48,027 in the superior court, was the purchase by the defendant of a certain lot on Maple Avenue in the city of Los Angeles. It was clearly proven that the price was one thousand seven hundred and fifty dollars and that eight hundred and forty dollars of the identical money out of which the price was paid had just been received by the defendant from money belonging to her separate estate, and that it was received upon the same terms and understanding as the other moneys received by him from that source. The court found and adjudged that her estate was the equitable owner of twelve twenty-fifths of this lot and directed a conveyance thereof to the plaintiff as executor of the estate. This finding and judgment was clearly correct. Payment of a part of the price by him with her money held in trust by him, was the same, in legal effect, as between the parties, as a payment by her. It created a resulting trust in her favor for an interest which equaled her proportion of the price. (*Moultrie* v. *Wright,* 154 Cal. 523, [98 Pac. 257], and cases there cited.)

Our conclusion on the respective appeals is that the judgment in the first action, in so far as it declares and enforces a trust in respect to the ten shares of stock in the First National Bank of Monrovia, purchased by defendant on December 18, 1891, should be affirmed; that the judgment and order appealed from in the case numbered 48,027 in the superior court of Los Angeles County should be affirmed; that the personal judgment in the first action should be reversed and that a new trial should be granted as to a part of the issues relating thereto, but not as to all. The case has been

twice tried upon substantially the same evidence. Upon appeal after the first trial we were constrained to uphold the findings that no trust relation was established, solely because of the fact that this court cannot weigh the evidence and decide between the inconsistent inferences which may sometimes be drawn from the same facts, and the judgment was reversed solely because of the admission of evidence bearing upon this issue, which we held to be incompetent, and which would have been harmless, but for the fact that the finding seemed of doubtful verity. The case has been tried again and it apparently received careful reconsideration in the lower court. We are satisfied with the findings and conclusions of that court on all points, except the conclusion as to the amount of interest or profit to be charged against the defendant and included in the personal judgment, and the finding that at the time the action was begun the defendant owned no property of any character, except that described in finding XIII. It is claimed by the respondent that the defendant owned other property at that time, in addition to that described in the finding, and that the property described had greatly increased in value after its purchase, so that the amount allowed against the defendant is not, in fact, disproportionate to respondent's just share of the present value of the accumulations. It is claimed by the defendant that the amounts expended, other than for mere living, should be taken into the account, as perhaps they should, if it is necessary to do so in order to ascertain how much of his income was saved and accumulated. There should be a new trial of the question whether he had other property and as to the amount justly allowable to respondent as interest or profit, and upon those issues only.

Inasmuch as the question may arise upon the trial of these issues, it is necessary to say something upon the subject of the liability of a husband for the maintenance of his wife. The law imposes on him the duty to maintain his wife. (*Chaffee* v. *Browne,* 109 Cal. 219, [41 Pac. 1028] ; *Bashore* v. *Parker,* 145 Cal. 530, [80 Pac. 707].) This means that it is his duty to furnish her money to pay such of the living expenses as he leaves it to her to look after, or to pay them himself. In the absence of evidence showing the fund from which he paid these expenses, it will be presumed to be of community funds,

rather than from his separate property. Her separate property, acquired by devise or succession, will not be resorted to, even for her support, except where the community property fails and he refuses to pay or supply from his separate estate. (Civ. Code, secs. 174, 176.) But, of course, she may consent to the use of her own separate estate, and if so it should be charged to her accordingly.

The judgment and order appealed from in case numbered 48,027, in the superior court, being case L. A. No. 2660 in this court, are affirmed. The judgment and order in the other case, so far as they relate to the aforesaid ten shares of stock in the First National Bank of Monrovia, are affirmed. The personal judgment for $40,764.76 is reversed and the order denying a new trial is reversed as to a part of the issues only as hereinbefore indicated, and otherwise it is affirmed. The cause is remanded and the superior court is directed to try the issues only so far as may be necessary to determine how much should be allowed to the plaintiff in lieu of profits received by defendant in the investment and use of her money in his own name, or her just proportion or interest in the property on hand at the time the action was begun, or its subsequent transmutations, if that method shall be deemed more just, advisable, and convenient.

The appellant shall recover only one half the costs of appeal.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.