[Civ. No. S. C. 7. Second Appellate District, Division One.—April 10, 1937.]

JESSE B. ELLIS, Respondent, v. J. S. ELLIS et al., Appellants.

J. S. Ellis and G. M. Ellis, *in pro. per.*, and James W. Bell for Appellants.

Paul C. Jones for Respondent.

DESMOND, J., *pro tem.*—The appellants in this case, J. S. Ellis and George M. Ellis, are respectively father and brother of the plaintiff, who obtained a judgment terminating a trust in which all three were interested as cash contributors.

The judgment ordered sold a sufficient amount of the *res*, practically all real estate, to pay plaintiff the sum to which he was found entitled and imposed a lien upon the property in favor of plaintiff pending payment of said sum. The money judgment runs against the father J. S. Ellis in person and as trustee.

Appellants claim that no sufficient ground existed for termination of the trust; that the order to sell was inequitable as being detrimental to the interest of George, as truly a beneficiary as plaintiff; that the personal judgment against the father cannot stand, since as trustee he was not in default; finally, that the only proper judgment would be a sale and a final balance to be distributed as the interests appear. The case is before us on the judgment roll and the briefs disclose little disagreement as to facts. The two brothers, in their twenties, each contributed $4,000, which they had saved, to a fund which their father increased by adding $13,500 of his own money. The purpose of the sons turning their money over to their father was for him to loan it at high interest rates. The first investment, except for a few small loans that brought in $85 income, was in a $3,500 mortgage October 22, 1927; the second, a $17,500 mortgage January 27, 1928. It will be noted that these two investments, $21,000 in amount, absorbed all the money contributed by the three parties except $500. A building and loan certificate valued at the time of trial at $150 had also been acquired and that certificate, with the two parcels of real estate upon which the loans had been made, constituted the entire trust property affected by the judgment. The real estate had been taken in by foreclosure and each parcel is free and clear of encumbrances.

In terminating the trust, the court found "that the duration of said trust was left to the option of the parties and the ability of the trustee to invest the funds at the high rates of interest". By reason of default under the mortgages and ensuing foreclosure and purchase by trustee at the sales, the money of the trust was no longer invested in loans at a high rate of interest, but in real estate, nor does it appear that there was any opportunity to so invest it; therefore, one of the principal objects of the trust was impossible of fulfillment. The court said in its findings on this point:

"That the original intentions of the parties to said trust can no longer be carried out. That there are no longer any

trust funds available to make loans, no method is known whereby additional funds may be secured to make loans, and no high rates of 10% and 12% interest are now being offered for money to finance new construction.'' Having in mind the provisions of section 2279 of the Civil Code, ''A trust is extinguished by the entire fulfillment of its object, or by such object becoming impossible or unlawful'', we are of the opinion that the trust was properly terminated.

■ The contention of appellant J. S. Ellis that a personal judgment against him is not warranted by the evidence, we consider well grounded. Having in mind the contributions to the trust fund made by the father and his two sons, and the net value of the estate at the time of trial, found to be $11,420.69, the court decreed that the father had a 27/43 interest in the *res* and each of the sons an 8/43 interest, valued at $2,124.72. Judgment in this amount was entered against ''J. S. Ellis and J. S. Ellis Trustee'', the court further decreeing that the trustee ''within a period of sixty days from the date of entry of judgment herein, sell a sufficient amount of the real and personal property which he now holds in trust in order to pay plaintiff the amount of his judgment, as ordered herein, and that he apply the proceeds of such sale or sales in the payment of said judgment.

''It is Further Ordered, Adjudged and Decreed that the judgment of the plaintiff, Jesse B. Ellis, as ordered herein, shall be a lien upon the real property. . . . ''

Respondent urges that the personal judgment is justified because the property of the trust was purchased with commingled funds and while the trial judge found that all of the funds were commingled by J. S. Ellis, it is very apparent from a statement signed by both sons and appearing in the record as an exhibit, that the sons were fully cognizant of and approved the manner in which the father invested the common fund. And the claim that the property was purchased with commingled funds cannot be sustained for the simple reason that the money was not used to effect a purchase but a loan, the property being bid in at the foreclosure sale. This is not a case of negligent or unjust commingling of funds which, because of inability to trace the investment through various business ramifications, warrants a court in entering a personal judgment against a faithless or careless trustee, for on the evidence produced the court experienced no difficulty

in identifying the *res* and found "That there was no money lost to the trust estate by the said J. S. Ellis in his management, control and operation of said trust estate, and that the depreciation of the assets of said trust was due to economic conditions."

Under these circumstances, no fraud being shown, and applying the rule mentioned in *Title Insurance & Trust Co.* v. *Ingersoll*, 158 Cal. 474 [111 Pac. 360], we feel that liability of appellant J. S. Ellis should have been limited to his holdings as trustee. That case is not altogether like the one before us, but the language as to this particular point appearing on page 481 is apropos:

"The beneficiary of a trust, of course, cannot have a judgment declaring the defendant a trustee of specific property bought with trust funds, and decreeing such property to be the property of the beneficiary, and also a personal judgment for the money invested by the defendant in that property." We have already indicated that the amount $2,124.72, which by the judgment appellant J. S. Ellis was held to pay respondent both individually and as trustee was arrived at by determining that he was the owner of a specific 8/23 of the trust property all of which is listed in the judgment.

For the reasons stated, we feel that the judgment should be modified by eliminating the language by which J. S. Ellis is held personally responsible, fixing liability under the judgment solely upon J. S. Ellis, as such trustee.

Since all interest of plaintiff in the trust property was declared terminated as of February 5, 1935, and the money judgment of $2,124.72 was fixed as the value of an 8/43rds interest in the trust property determined on that date, equity demands a further modification because of the possibility that a change in real estate values has taken place since then. The cause, therefore, is remanded to the trial court with instructions to modify the judgment by striking out the paragraph granting to plaintiff recovery of the sum of $2,124.72, with costs and interest, from J. S. Ellis and J. S. Ellis, trustee; and further to modify the judgment by ordering the trust property sold by the trustee within a reasonable time to be fixed by the court, plaintiff to be entitled to costs of suit in the superior court and to 8/43rds of the net proceeds realized from such sale, his beneficial interest not to be terminated as of February 5, 1935, but to continue to the time of sale. All portions

of the original judgment contrary to these suggested modifications to be stricken, and as so modified, the judgment is affirmed, each party to bear his own costs of this appeal.

York, Acting P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 3, 1937.