Filed 7/31/13  Funtime Watersports v. Serenity Cove CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **FUNTIME WATERSPORTS, INC.,** | |
| **Plaintiff and Respondent,** | **A136598** |
| **v.** | |
| **SERENITY COVE, LLC, et al.,** | **(Sonoma County Super. Ct. No. SCV-246847)** |
| **Defendants and Appellants.** | |

In this action for breach of contract and fraudulent transfer, defendants and appellants Serenity Cove, LLC (Serenity Cove), and JDL Lakeside, LLC (JDL Lakeside),[1] appeal from a judgment entered in favor of plaintiff and respondent Funtime Watersports, Inc. (respondent), after a bench trial.  Appellants contend that the trial court erred in (1) rejecting their statute of limitations defense as to JDL Lakeside, and (2) awarding a $500,000 judgment against Serenity Cove.  We conclude the judgment improperly awarded respondent both the value of assets fraudulently transferred to Serenity Cove and the imposition of a constructive trust on those same assets, and modify the judgment accordingly.  As modified, we affirm the judgment.

---

[1]  Serenity Cove and JDL Lakeside are collectively referred to as appellants.

1

BACKGROUND[2]

Jerry Hansen and Karen Hart-Hansen (the Hansens) owned and operated a park for recreational vehicles (RV's) and water sports in northern California through two corporations, including respondent. In 2005, the Hansens entered into an agreement with Damian Johnston (Johnston) and John McMahon (McMahon) to sell the property and business for $2.6 million. For financing reasons, Johnston and McMahon subsequently requested that the purchase of the real property and the business assets be set forth in separate agreements. Accordingly, the parties executed a $2.1 million contract for the sale of the real property, with the understanding that there would be a second contract for $500,000 for the sale of the business assets.

Shortly before the close of escrow on the real property, Johnston presented the Hansens with a contract to purchase the park's business assets for $500,000, with respondent (the owner of the assets) financing the sale. The "Buyer" was identified on the contract as "JDL LLC" (JDL), although there is no evidence in the record that any entity by that name existed then or subsequently. After the Hansens signed the contract on behalf of respondent, Johnston informed them that only McMahon was authorized to sign on behalf of JDL and that he would mail them the fully executed contract after McMahon signed. When escrow closed on the real property, the Hansens turned over respondent's business assets to Johnston and McMahon. The Hansens never received either the signed contract for purchase of the business assets or any of the $500,000 purchase price.

McMahon and Johnston, with a third individual not relevant to this appeal, formed two entities in connection with the Hansens' park, JDL Lakeside and Serenity Cove. McMahon informed the Hansens that JDL Lakeside was an entity formed to purchase mobile homes located on the real property for demolition. JDL Lakeside purchased two

---

[2] Because this appeal is from a judgment issued after a bench trial, our recitation of the facts construes the evidence in the light most favorable to the judgment. (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765 (*Cuiellette*).)

such mobile homes from the Hansens in 2007.  Serenity Cove owned the real property and business assets sold by the Hansens.

In February 2010, respondent sued Johnston, McMahon, Serenity Cove, and Does 1 through 10.  The complaint pled several causes of action, including a breach of contract claim against McMahon and a fraudulent transfer claim against Serenity Cove.  In February 2011, after the statute of limitations for breach of a written contract had run, respondent amended its complaint to substitute JDL Lakeside for Doe 1.  The trial court permitted an additional amendment during the bench trial adding the allegation that Johnston and McMahon were "members and/or agents of" JDL Lakeside.

After a bench trial, the trial court issued a statement of decision in favor of respondent and against JDL Lakeside and Serenity Cove.  The trial court found that JDL Lakeside "entered into an enforceable written contract to purchase the business assets of [respondent] for $500,000," "breached the written contract," and "Serenity Cove is required to pay for the business assets transferred to it by [Johnston, McMahon, and JDL Lakeside]."  The trial court entered a final judgment against JDL Lakeside and Serenity Cove in the amount of $500,000 plus prejudgment interest.  The judgment additionally directed that "[a] constructive trust is hereby imposed on . . . Serenity Cove . . . covering the business assets previously owned by [respondent]."  This appeal followed.

DISCUSSION

I. *Standard of Review*

" 'In general, in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.]  In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.]  We may not reweigh the evidence and are bound by the trial court's credibility determinations.  [Citations.]  Moreover, findings of fact are liberally construed to support the judgment.  [Citation.]'

3

[Citation.]  [¶]  'Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo. [Citation.]'  [Citation.]" (*Cuiellette*, *supra*, 194 Cal.App.4th at p. 765.)

II.  *The Statute of Limitations for Respondent's Claim Against JDL Lakeside*

Under Code of Civil Procedure, section 474, "[w]hen the plaintiff is ignorant of the name of a defendant" upon the filing of the original complaint, the plaintiff may allege claims against Doe defendants.  "[W]hen [the defendant's] true name is discovered, the pleading or proceeding must be amended accordingly." (*Ibid.*)  Upon such amendment, that defendant " 'is considered a party to the action from its commencement so that the statute of limitations stops running as of the date the original complaint was filed.' " (*Okoro v. City of Oakland* (2006) 142 Cal.App.4th 306, 313.) Appellants contend that JDL Lakeside was not properly substituted for Doe 1 pursuant to Code of Civil Procedure section 474—and the statute of limitations was thereby not tolled by the filing of the original complaint—for two reasons: the charging allegations in the original complaint were insufficient to state a claim against the Doe defendants, and respondent was not ignorant of JDL Lakeside's identity at the time the original complaint was filed.  We reject both contentions.

A.  *The Charging Allegations in the Original Complaint*

"Even if a plaintiff meets the other requirements of Doe pleading, an amended pleading will not relate back unless the original complaint set forth or attempted to set forth some cause of action against fictitiously named defendants.  [Citations.]  'It is not enough, of course, simply to name "Doe" defendants.  Rather, the complaint must allege that they were *responsible* in some way for the acts complained of.'  [Citation.] . . . 'Although the ironclad rule that the original complaint must contain charging allegations against the fictitious defendants may trap the unwary, compliance is relatively simple. The addition of "s" to "defendant" in the charging allegations will suffice as long as the complaint does not limit the word "defendants" to those sued by their correct names.' [Citations.]" (*Winding Creek v. McGlashan* (1996) 44 Cal.App.4th 933, 941, fn. omitted (*Winding Creek*).)

4

In *Winding Creek*, "every single cause of action stated in [the original complaint] incorporated by reference plaintiffs' allegation that '. . . each of the fictitiously named Defendants is responsible in some manner for the occurances [*sic*] herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by those Defendants.' Also incorporated in each cause of action was the allegation that '. . . each Defendant acted as agent for their co-Defendants and were acting in that capacity at all times herein mentioned, or were in the employment of said other Defendants acting within the course and scope of their employment.' The prayer for relief requests judgment 'against Defendants and each of them . . . .' The complaint thus alleges that defendants, whose identities or culpable acts were unknown at the time of filing, are in some way responsible for the acts of which plaintiffs complain." (*Winding Creek*, *supra*, 44 Cal.App.4th at pp. 941-942, fns. omitted.)

In another case, *Barnes v. Wilson* (1974) 40 Cal.App.3d 199 (*Barnes*), the original complaint alleged: " 'Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Doe is negligently responsible in some manner for the events and happenings herein referred to, and negligently caused injuries and damages proximately thereby to plaintiff as herein alleged; and plaintiff will ask leave of the Court to amend this complaint to show their true names and capacities when same have been ascertained.' " (*Id.* at p. 201, fn. omitted.) The *Barnes* court found that a subsequent amendment substituting a named defendant for one of the Does related back to the filing of the original complaint. (*Id.* at p. 206, discussed with approval in *Marasco v. Wadsworth* (1978) 21 Cal.3d 82, 86.)

In contrast, in the sole case relied upon by appellants, *Milam v. Dickman Construction Co.* (1964) 229 Cal.App.2d 208, the court found that "*all* of the charging allegations [in the original complaint] . . . refer[ed] *only* to the construction company and the garbage company"—the named defendants—and not to the Does. (*Id*. at p. 213.) The court concluded, "[t]he complaint having failed to state a cause of action against the fictitious defendants, the statute of limitations is not tolled as to them by the filing of the complaint." (*Id.* at p. 214.)

5

Respondent's original complaint alleged that "Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Defendants took some part of the actions and/or omissions alleged in this Complaint and are therefore liable to Plaintiff for the relief prayed for herein." This allegation was incorporated by reference into each of the causes of action alleged in the complaint. Moreover, one of the causes of action was specifically alleged "As Against All Defendants." These charging allegations, like those in *Winding Creek* and *Barnes*, are sufficient to permit the substitution of JDL Lakeside to relate back to the filing of the original complaint.

B. *Respondent's Knowledge of JDL Lakeside*

With respect to appellants' contention that respondent was not ignorant of JDL Lakeside's identity at the time the original complaint was filed, we note as an initial matter that appellants appear to have waived this issue by failing to raise it before the trial court. "As a general rule, 'issues not raised in the trial court cannot be raised for the first time on appeal.' [Citation.]" (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.) While appellants' brief notes that they "point[ed] out [to the trial court that] JDL's identity as the buyer was known," the cited portions of the record are not presented as part of an argument regarding respondent's knowledge of JDL Lakeside's identity for statute of limitations purposes.

In any event, even if appellants did not waive the issue, we reject it on the merits. "Code of Civil Procedure section 474 is to be liberally construed. [Citation.] '[T]he relevant inquiry when the plaintiff seeks to substitute a real defendant for one sued fictitiously is *what facts the plaintiff actually knew* at the time the original complaint was filed.' [Citation.] 'It is when [plaintiff] is actually ignorant of a certain fact, not when [plaintiff] might by the use of reasonable diligence have discovered it. Whether [plaintiff's] ignorance is from misfortune or negligence, [plaintiff] is alike ignorant, and this is all the statute requires.' [Citation.] [¶] The phrase 'ignorant of the name of a defendant' is broadly interpreted to mean not only ignorant of the defendant's identity, but also ignorant of the facts giving rise to a cause of action against that defendant. '[E]ven though the plaintiff knows of the existence of the defendant sued by a fictitious

6

name, and even though the plaintiff knows the defendant's actual identity (that is, his name) the plaintiff is "ignorant" within the meaning of the statute if [plaintiff] lacks knowledge of that person's connection with the case or with [plaintiff's] injuries. [Citations.] The fact that the plaintiff had the means to obtain knowledge is irrelevant. [Citation.]' [Citation.]" (*Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1170 (*Fuller*).)

There is evidence that, prior to the filing of the original complaint, the Hansens knew JDL Lakeside's purpose was to buy mobile homes for demolition. This does not provide the Hansens with knowledge that JDL Lakeside was also intended to be the contracting party for the business assets purchase. Nor, contrary to appellants' suggestion, did the fact that the contract identified the party buying the business assets as "JDL LLC" supply respondent with the knowledge that *JDL Lakeside* was intended to be the purchasing party.[3] That respondent might have suspected JDL Lakeside was in fact the contracting entity due to the similarity of the names does not preclude substitution, as a plaintiff " 'does not relinquish [his or] her rights under [Code of Civil Procedure] section 474 simply because [he or] she has a suspicion of wrongdoing arising from one or more facts [he or] she does know.' " (*Fuller*, *supra*, 84 Cal.App.4th at p. 1172; see also *Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 363.)

The authorities cited by appellants, *Lipman v. Rice* (1963) 213 Cal.App.2d 474 (*Lipman*) and *Stephens v. Berry* (1967) 249 Cal.App.2d 474 (*Stephens*), are factually distinguishable. In *Lipman*, the original complaint identified the substituted defendant by name and alleged she did "exactly the same things" as the named defendants, thereby establishing that at the time the original complaint was filed the plaintiff knew the substituted defendant was "a party who had acted adversely to her in the alleged conspiracy." (*Lipman*, at pp. 479-480.) In *Stephens*, the evidence conclusively established the plaintiff knew the identity of the substituted defendant and his liability for the plaintiff's injuries "long before suit was filed." (*Stephens*, at p. 477.)

---

[3]  Indeed, appellants argued below that the two entities were distinct. For example, their trial brief contended that the contract "shows the buyer to be JDL, LLC, *not JDL LAKESIDE, LLC . . . . JDL, LLC is not even named as a defendant.*"

In sum, the trial court did not err in determining that JDL Lakeside was properly substituted for Doe 1 pursuant to Code of Civil Procedure section 474 and that the statute of limitations did not bar respondent's claim against JDL Lakeside.

III. *The $500,000 Judgment Against Serenity Cove*

Appellants' final contention is the trial court erred in awarding a $500,000 judgment against Serenity Cove. Appellants primarily argue this judgment was entered on respondent's breach of contract claim and should be reversed because the complaint did not allege such a claim against Serenity Cove. However, although the trial court's statement of decision does not explicitly so state, its findings plainly indicate the judgment against Serenity Cove was for respondent's fraudulent transfer claim, not breach of contract. (*Cuiellette*, *supra*, 194 Cal.App.4th at p. 765 ["findings of fact [contained in a statement of decision] are liberally construed to support the judgment"].) Most notably, while the statement of decision finds that JDL Lakeside "entered into an enforceable written contract" and then "breached the written contract," it makes no such findings as to Serenity Cove. Instead, the statement of decision explains that "Serenity Cove is required to pay for the business assets transferred to it" by JDL Lakeside, a finding relevant to respondent's fraudulent transfer claim. Because one remedy for fraudulent transfer is a judgment for "an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require," up to the amount of the underlying claim (Civ. Code, § 3439.08, subds. (b) & (c)), we conclude that the $500,000 judgment against Serenity Cove was for fraudulent transfer, not breach of contract.

Appellants also argue, even if the $500,000 judgment against Serenity Cove was awarded on respondent's fraudulent transfer claim, it is still error because Serenity Cove "did not have its day in court" on the issue of the actual value of the assets and because the trial court issued the award "*regardless* of the value of the assets." The claim that Serenity Cove "did not have its day in court" is without merit. Serenity Cove presented testimony from one of its officers as to the value of the business assets at the time of the transfer. Moreover, Serenity Cove was not precluded from presenting other evidence of

8

the value of the business assets; that it declined to do so is not a deprivation of its "day in court."

We also find no error in the trial court's implied finding that the value of the assets at the time of transfer was $500,000. Our review of this issue considers only whether there is substantial evidence to support this finding. "The substantial evidence standard applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial. [Citation.]" (*SFPP, L.P. v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.) The contract price is sufficient evidence to support this finding. (*Offeman v. Robertson-Cole Studios, Inc.* (1926) 80 Cal.App. 1, 14 [contract price can be "evidence to prove the reasonable value of services performed or materials furnished under the contract"]; see also *Prince v. Harting* (1960) 177 Cal.App.2d 720, 729 ["price paid for the goods by the [defendants] has been established, and that in itself is evidence of their value"].)

Serenity Cove also challenges the judgment against it for both awarding $500,000 and imposing a constructive trust on the business assets, because "[i]f both aspects of the judgment against Serenity [Cove] were enforced, Serenity [Cove] would be out the $500,000 <u>and</u> the assets purchased with that $500,000."[4] The judgment entitling respondent to *both* a constructive trust, resulting in the transfer of the assets back to it, *and* the value of the assets at the time of the transfer, improperly awards respondent a double recovery. (See *Fowler v. Fowler* (1964) 227 Cal.App.2d 741, 745 [a plaintiff "cannot have a judgment declaring the defendant to be a constructive trustee *and* a personal judgment for money invested in the subject property"]; see also *Title Ins. and Trust Co. v. Ingersoll* (1910) 158 Cal. 474, 481 ["The beneficiary of a trust . . . cannot have a judgment declaring the defendant a trustee of specific property bought with trust

---

[4] "A constructive trust is a *remedy* used by a court of equity to compel a person who has property to which he or she is not justly entitled to transfer it to the person entitled to it. The trust is passive, the only duty being to convey the property." (13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 319, p. 892.) A constructive trust is one possible remedy for fraudulent transfer. (*Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1645.)

funds, and decreeing such property to be the property of the beneficiary, and also a personal judgment for the money invested by the defendant in that property."].) Accordingly, we modify the judgment to clarify that, as against Serenity Cove, respondent is entitled to either the money judgment or the constructive trust, but not both.

## DISPOSITION

The trial court's judgment is modified by the addition of the following paragraph after Paragraph 4: "5.  As against Defendant Serenity Cove, LLC, Plaintiff may enforce either the money judgment or the constructive trust, but not both."  As so modified, the judgment is affirmed.  Funtime Watersports, Inc., is awarded its costs on appeal.

SIMONS, J.

We concur.

JONES, P.J.

NEEDHAM, J.

10